UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ONLINE PUBLICATION ONLY

JAMES McMILLAN,

                      Plaintiff,

- versus -

NEW YORK STATE BOARD OF ELECTIONS,

                      Defendant.

MEMORANDUM AND ORDER

12-CV-302 (JG)

JOHN GLEESON, United States District Judge:

        James ("Jimmy") McMillan, *pro se*, brings this action against the New York State Board of Elections (the "Board"), seeking an injunction requiring the Board to recount all ballots from the 2010 gubernatorial election in which McMillan, representing the "Rent Is 2 Damn High" party, was a candidate. In response to McMillan's complaint, this court entered an order directing the Board to show cause why such a recount should not be ordered. The Board filed a response opposing a recount on February 21, 2012, and oral argument was held on March 9, 2012. For the reasons explained below, McMillan's application for an injunction is denied, at least at this preliminary stage.[1]

---

[1] McMillan has not sought a *preliminary* injunction specifically, but only an injunction generally. However, the Board has treated McMillan's application as one for a preliminary injunction, *see* ECF No. 12, and has not moved to dismiss the lawsuit entirely. Moreover, as McMillan's petition is *pro se*, I am obligated to construe it liberally and interpret it "to raise the strongest arguments that [it] suggest[s]." *See Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (internal quotation marks omitted). Accordingly, in spite of my skepticism that further proceedings in this case will be fruitful, this order will treat McMillan's instant request as an application for a preliminary injunction only, and therefore the order does not dispose of the case in its entirety.

BACKGROUND

Under New York election law, a political organization is considered an official political "Party"[2] only if its "candidate in the preceding gubernatorial election received at least 50,000 votes." *Dillon v. N.Y. State Bd. of Elections*, No. 05-CV-4766 (JG), 2005 WL 2847465, at *1 (E.D.N.Y. Oct. 31, 2005) (citing N.Y. Elec. Law § 1-104(3)).  "An organization that participates in the campaign and election process but did not receive the requisite number of votes in that election to achieve 'Party' status is defined as an 'independent body.'" *Id.* (citing N.Y. Elec. Law § 1-104(12)).  An organization that has attained "Party" status enjoys certain privileges, including that, for the next four years, its candidates may "participate in the primary process instead of the independent nomination petition course provided in [New York Election Law] § 6-138(4)." *Johnson v. Cuomo*, 595 F. Supp. 1126, 1129 (N.D.N.Y. 1984).

In 2010, McMillan ran for Governor of New York on behalf of the "Rent Is 2 Damn High" party.  According to the Board, McMillan received 41,131 votes, out of a total of 4,763,688 votes cast in the election.  Gov't Opp. at 3; *see also* N.Y. State Bd. of Elections, 2010 Election Results, Governor/Lt. Governor, *available at* http://www.elections.ny.gov/NYSBOE/ elections/2010/general/2010GovernorAmended01272011.pdf (last visited March 14, 2012). Accordingly, the "Rent Is 2 Damn High" party was roughly 9,000 votes shy of attaining official Party status.

McMillan has filed this suit seeking an order compelling the Board to recount all ballots cast in the 2010 gubernatorial election in an effort to close the gap between his 41,131 recorded votes and the 50,000 votes he needs to attain official Party status.

---

[2]   This opinion uses "Party" with an uppercase "P" to refer to the type of political party that has achieved official "Party" status within the meaning of New York Election Law § 1-104(3).

2

DISCUSSION

A.  *Standard for Issuing a Preliminary Injunction*

The Second Circuit has instructed that:

> [E]ntry of a preliminary injunction is appropriate where the party seeking an injunction establishes (1) that the injunction is necessary to prevent irreparable harm and (2) either a likelihood of success on the merits or a sufficiently serious question going to the merits of the claim as to make it a fair ground for litigation plus a balance of hardships that tips decidedly in favor of the moving party.  However, where an injunction is mandatory – that is, where its terms would alter, rather than preserve, the status quo by commanding some positive act – the moving party must meet a higher standard than in the ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage' will result from a denial of the injunction.  This heightened showing is also required where the issuance of the injunction would provide the movant with substantially all the relief he or she seeks and where the relief could not then be undone, even if the non-moving party later prevails at trial.

*Phillip v. Fairfield Univ.*, 118 F.3d 131, 133 (2d Cir. 1997) (internal citations omitted).

B.  *Analysis*

McMillan here seeks an injunction that both is mandatory and would provide him with all the relief he seeks through his lawsuit—a recount of all of the ballots cast in the 2010 gubernatorial election.  Yet he has failed to demonstrate the requisite impending irreparable harm, a likelihood of success on the merits, or a balance of hardships that tips decidedly in his favor.  Even construing McMillan's *pro se* petition liberally and interpreting it "to raise the strongest arguments that [it] suggest[s]," *see Pabon*, 459 F.3d at 248 (internal quotation marks omitted), I am unable to discern a legal claim underlying his petition that has any potential merit – much less one on which he is "clearly" entitled to relief.

To the extent McMillan intends to raise a claim under state election law, he is far too late.  New York Election Law § 16-106 provides that any voter may contest the state's

3

"canvass of returns," *i.e.*, vote count, by instituting a proceeding in state court within 30 days after the election. *See* N.Y. Elec. Law § 16-106(2), 16-106(5). Because the 2010 gubernatorial election occurred on November 2, 2010, the latest date McMillan could have challenged the vote count under New York Election Law § 16-106 was December 1, 2010. McMillan filed no such action. McMillan asserts that he "would have ask [sic] for a Re-Count sooner," but he was unable to do so until he completed an appeal before the Second Circuit. However, he provides no reason why his unrelated appeal prevented him from seeking this state-law remedy.

McMillan's petition also atmospherically suggests a religious-discrimination basis for his claim, referring in his papers to the "New York State Board of Elections Religious Officials," and the Board officials' "Religious beliefs." However, this argument appears to be based only on the Board's alleged antipathy toward the word "damn" in McMillan's chosen party moniker, the "Rent Is 2 Damn High." Although the Board's exclusion of the word "damn" from ballots was relevant to a previous lawsuit brought by McMillan in this court, *see McMillan v. N.Y. State Bd. of Elections*, No. 10-CV-2502 (JG) (VVP), 2010 WL 4065434 (E.D.N.Y. Oct. 15, 2010); *McMillan v. N.Y. State Bd. of Elections*, No. 10-CV-2502 (JG) (VVP), 2010 WL 2607272 (E.D.N.Y. June 25, 2010), it has no bearing here, because there is no dispute that the word "damn" *did* appear on the relevant ballot. McMillan acknowledges that his political affiliation on the 2010 gubernatorial ballot was designated as the "Rent Is 2 Damn High."

Finally, McMillan made reference to in his reply papers (and emphasized heavily at oral argument) the so-called "overvote" problem caused by the electronic, optical-scan voting machines that New York used for the first time in 2010. The overvote problem was the subject of a lawsuit brought against the Board in 2010. *See NAACP N.Y. State Conference v. N.Y. State Bd. of Elections*, No. 10-CV-2950 (FB) (RML) (E.D.N.Y.). The Brennan Center for Justice,

4

which represented the plaintiffs in that case, has argued that about 20,000 ballots for governor in 2010 were not counted because the voters invalidly selected more than one candidate on the ballot, and the new voting machines failed to properly warn the voters of the error.  *See* Lawrence Norden & Sundeep Iyer, Brennan Center for Justice, Design Deficiencies and Lost Votes (2011), *available at* http://www.brennancenter.org/content/resource/design_deficiencies_and_lost_votes/ (click "Download (pdf)") (last visited March 14, 2012).  But the overvote problem is of no help to McMillan here, because overvoted ballots cannot be counted as a vote for any candidate.  Thus, ordering a recount of all overvoted ballots will not produce any more votes for McMillan.

Finally, I am mindful that even if McMillan had raised a potentially viable claim, an injunction is an equitable remedy, and its issuance must be supported by a balance of the equities.  The difference between the number of votes McMillan received (41,131) and the number he needs in order for the "Rent Is 2 Damn High" organization to be recognized as a Party (50,000) is large: roughly 9,000 votes.  McMillan provides no reason to think that the 2010 election suffered from such egregious counting errors as to have undercounted his vote by a full 20%.

Moreover, the winner of the 2010 gubernatorial election, Andrew Cuomo, received 2,903,516 votes.  Trailing Cuomo by about 2.85 million votes, McMillan clearly did not come close to, and does not here argue he had a chance of, winning the election.  As the Supreme Court has held, "[b]allots serve primarily to elect candidates, not as forums for political expression." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 363 (1997).  An onerous, expensive and seriously belated recount of all 4.7 million paper ballots cast in the 2010 election, without even an allegation that the determination of the winner is at stake, cannot be justified

under the equitable considerations that inform the exercise of the court's discretion to issue equitable relief such as a mandatory injunction.

## CONCLUSION

Because McMillan does not raise any claims that appear meritorious, nor does he offer any reason to think that a recount would surface an additional 9,000 votes for him, his application for a preliminary injunction mandating the New York State Board of Elections to recount all of the ballots cast in the 2010 gubernatorial election is denied.[3]

So ordered.


John Gleeson, U.S.D.J.


Dated: March 16, 2012
       Brooklyn, New York

---

[3] After oral argument, McMillan filed a motion asking the court to issue a subpoena requiring the Board to turn over to McMillan "[a]ll records and information concerning overvoting," including the "number of votes rejected by the optical scanning voting machine[s]" and a list of the "groups/organizations [the Board] met with to discuss overvoting." See ECF No. 11 (some capitalization omitted). This motion is also denied, although McMillan may have an opportunity to seek discovery on this issue under the supervision of the Magistrate Judge, if his case progresses to that stage.